**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| TIMOTHY SCHOFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:12-CV-28 NAB |
| | ) | |
| ROY HOPKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER[1]**

This matter is before the Court on Defendants Roy Hopkins and Kenneth Paris' Motion for Summary Judgment. [Doc. 67.] Plaintiff Timothy Schofield filed a Response in Opposition to Defendants' Motion. [Doc. 77.] Defendants filed a Reply Memorandum. [Doc. 78.] Plaintiff filed a sur-reply. [Doc. 79.]

## I. Procedural History

Plaintiff Timothy Schofield filed a complaint on April 3, 2012 asserting claims under 42 U.S.C. § 1983 alleging that Roy Hopkins, Correctional Officer "Ferguson," and Supervisor "Chris" violated his constitutional rights by failing to protect him from an assault by another inmate, Christopher Eaton. [Doc. 1.] This Court dismissed Schofield's complaint before service under 28 U.S.C. § 1915(e)(2)(B). [Doc. 5.] Schofield appealed the dismissal to the U.S. Court of Appeals for the Eighth Circuit. [Doc. 8.] On appeal, the Eighth Circuit found that Schofield's Complaint did not state a claim against Ferguson or Chris, but the claims against Hopkins could proceed. *See Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012). The Eighth Circuit

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 35.]

reversed the district court's order dismissing the complaint, and remanded for further proceedings. *Id.*

The Court then issued process on Schofield's Complaint. [Doc. 20.] Plaintiff was then granted leave to amend the Complaint by interlineation to replace the claims against Ferguson with claims against Kenneth Paris. [Doc. 56.] Defendants Roy Hopkins and Kenneth Paris filed a Motion for Summary Judgment. [Doc. 67.] Schofield filed a Response in Opposition. [Doc. 77.] Defendants filed a Reply Brief. [Doc. 78.] Schofield then filed a response to Defendant's Reply Brief. [Doc. 79.]

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The initial burden is placed on the moving party. *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on an issue of material fact. *Miller v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence, he or she must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *Herring v. Can. Life Assur. Co.*, 207 F.3d 1026, 1029 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Herring*, 207 F.3d at 1029 (quoting *Miller*, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights*, 2 F.3d 276, 279 (8th Cir. 1993). In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter. Rather, the court must simply determine whether a genuine issue of material fact exists. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000). In ruling on a summary judgment motion, the district court "must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

## III. Discussion

### A. Factual Background

Local Rule 4.01(E) provides the following with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party

> also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

In the Memorandum in Support of Summary Judgment, the Defendants submitted a Statement of Facts with citations to the record. Affidavits and exhibits, including Plaintiff's deposition testimony, were attached to the memorandum. Plaintiff, however, has not met the requirements of Local Rule 4.01(E) because he did not properly respond to the Defendants' Statement of Facts. Plaintiff also failed to provide the Court with a statement of material facts as to which he contends a genuine dispute exists.

As a result, for purposes of this motion, Plaintiff is deemed to have admitted all facts which were not specifically controverted. *See Ridpath v. Pederson,* 407 F.3d 934, 936 (8th Cir. 2005) (where plaintiff did not controvert defendant's statement of material fact, it was deemed admitted under E.D. Mo. Local Rule 4.01(E)). The Court has also viewed the DVD of the incident that is the subject of this suit and has included a description of the incident based on the observations contained therein. The Court finds that the following facts are material and undisputed for purposes of Defendant's Motion for Summary Judgment.[2]

In September 2011, Schofield was an inmate at the Moberly Correctional Center (MCC), an institution of the Missouri Department of Corrections. Another inmate at MCC, Christopher Eaton worked with Schofield in the laundry facility. Schofield and Eaton worked together for approximately eight or nine months. Defendant Roy Hopkins works as the supervisor of the laundry facility at MCC. Defendant Kenneth Paris works as a corrections officer at MCC.

[2] The facts listed are supported by appropriate citations to the record as required by Local Rule 4.01(E).

Before September 2011, Eaton was fired from the laundry facility for being uncooperative with other offenders that he worked with. After being fired and sometime before September 5, 2011, Eaton came up to Schofield in the "chow hall" during lunch time and accused Schofield and Schofield's co-worker of getting him fired and threatened them. Schofield does not remember if Eaton said he would kill him, but contends that Eaton said he would mess him up really bad. When Schofield returned to work, he and his co-worker told their supervisor who took them to Hopkins' office. Schofield told Hopkins that Eaton came up to them in the chow hall and said he was going to mess them up pretty bad.[3] Schofield also told Hopkins that he did not want to lose his job over it. Schofield did not ask Hopkins for protective custody. Schofield did not tell Roy Hopkins that he feared for his safety. Hopkins responded along the lines that Eaton was crazy.

On September 5, 2011, Paris was assigned to the MCC west zone gate. The west zone gate is an outer area that allows entry to the laundry facility and other buildings where offenders are assigned to work. Paris gave Eaton, along with other inmates, access to the gate on that day. Paris was not informed by Schofield or anyone else that Eaton was a threat. Schofield did not inform Paris that he feared for his safety because of Eaton or that he felt unsafe at the laundry facility as a result of any conversation with Eaton. Schofield did not ask Paris to place him in protective custody.

On September 5, 2011, a visual recording shows a person identified as Eaton approach Schofield from behind and then viciously beat him for almost three minutes without any intervention. During the unprovoked assault, Eaton punches and kicks Schofield. Eaton pours an unidentified liquid on Schofield. Eaton beats and kicks Schofield into a corner and the viewer

[3] Hopkins does not deny that he had a conversation with Schofield regarding Eaton. Therefore, the Court assumes the facts as testified to by Schofield regarding this conversation are true.

cannot see Schofield, only Eaton inflicting blows. After Eaton finishes beating Schofield, he waits for someone to appear. Eventually, some unidentified men appear, speak to Eaton, and politely handcuff him. Then, Schofield, who is injured, is eventually lifted up and escorted in handcuffs from the scene. Schofield never declared Eaton an enemy either before or after the assault by Eaton on September 5, 2011.

**B. Standard of Review for Failure to Protect Claim**

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer*, 511 U.S. at 832. "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take 'reasonable measures to guarantee the safety of inmates." *Id.*

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer*, 511 U.S. at 833. "Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. *Id.* "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective." *Id.* "Being violently assaulted in prison is

simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834.

"Qualified immunity protects government officials performing discretionary functions from liability for damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000). "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Berry v. Sherman*, 365 F.3d 631, 633 (8th Cir. 2004). "To resolve a government official's claim of qualified immunity, [the court applies] a two-part test, asking whether the plaintiff has demonstrated a violation of a constitutional right and whether that constitutional right was clearly established at the time of the violation." *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2010). "Prison inmates have a clearly established Eighth Amendment right to be protected from violence by other inmates." *Curry*, 226 F.3d at 977.

"[A] prison official violates the Eighth Amendment only when two requirements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* For a failure to protect claim, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* "Determining what satisfies the sufficiently serious injury requirement is also claim dependent." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). "Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving*, 519 F.3d at 448. "Claims under the Eighth Amendment require a compensable injury to be greater than *de minimis*." *Id.* Therefore, a *de minimis* injury cannot

form the basis of a failure to protect claim. *Irving*, 519 at 448. No clear line divides *de minimis* injuries from others. *Id.*

Second, the prison official must have a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety. *Id.* A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"[Prison officials] who actually knew of a substantial risk to inmate safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. A prison official's duty is to ensure reasonable safety, a standard that incorporates due regard for prison officials unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844-45. "The question of whether the official knew of a substantial risk is a factual one subject to demonstration in the usual ways, including inference from circumstantial evidence." *Young v. Selk*, 508 F.3d 868 (2007). "Threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Young*, 508 F.3d at 874.

"Although the failure-to-protect cause of action has a subjective component, the critical inquiry for qualified immunity purposes is whether it was objectively legally reasonable for the prison official to believe that his conduct did not violate the inmate's clearly established Eighth Amendment right." *Curry*, 226 F.3d at 977. The Eighth Circuit has held in a number of cases that prison officials are entitled to qualified immunity from § 1983 damage actions premised on

an Eighth Amendment failure-to-protect theory when an inmate was injured in a surprise attack by another inmate. *Curry*, 226 F.3d at 978-79.

**C. Analysis**

**1. Kenneth Paris**

After a review of the parties' pleadings and examination of the record, the Court finds that summary judgment should be granted in favor of Kenneth Paris. Paris' sole involvement in the September 5, 2011 incident was allowing Eaton to access the laundry area after he had been fired from his laundry job. There is no evidence that Paris had any knowledge that Eaton was fired or that Eaton had threatened Schofield or anyone else. Paris did not receive any information from Schofield or anyone else that Eaton should not be allowed in the laundry area. Based on the facts presented, there is no evidence that Paris had any knowledge or should have inferred there was a risk of substantial harm to Schofield in allowing Eaton to enter the laundry area. Even if Paris was negligent in allowing Eaton to access the laundry area, he would not be found liable of an Eighth Amendment violation. *See Pagels v. Morrison*, 335 F.3d 736, 742 (8th Cir. 2003) (negligence cannot give rise to an Eighth Amendment failure-to-protect claim). Therefore, the Court will grant summary judgment in favor of Paris.

**2. Roy Hopkins**

**a. Qualified Immunity based on Surprise Attack**

As an initial matter, the Court does not consider this case a "surprise" attack case. If, as the Court has found is true, Schofield told Hopkins that Eaton said he would mess him up, there is no surprise about the attack. The only surprise about the attack was that Eaton attacked Schofield from behind. Therefore, the cases granting qualified immunity for prison officials in actions where inmates were injured in a surprise attack by another inmate do not apply to this

case. *See Tucker v. Evans*, 276 F.3d 999, 1001-2 (8th Cir. 2002) (officials entitled to qualified immunity where officers did not know of any threat and observed inmates laughing and spending time together just before assault); *Curry*, 226 F.3d 974 at 978-79 (officials entitled to qualified immunity when no evidence that murdered inmate was a likely target of inmate violence or that murderer harbored any animosity toward murdered inmate); *Prosser v. Ross*, 70 F.3d 1005, 1007-8 (8th Cir. 1995) (officials entitled to qualified immunity where inmate sustained permanent injuries after surprise attack by another inmate); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (qualified immunity granted where inmate and officers were unaware of threat to inmate who suffered attack from unknown assailants). Accordingly, Hopkins is not entitled to qualified immunity on the basis of a surprise attack.

**b. Elements of Failure to Protect Claim**

Next, Hopkins contends that Schofield cannot meet either part of the failure to protect analysis. First, Hopkins states that the uncontroverted material facts show that Schofield was not incarcerated under conditions posing a substantial risk of serious harm. The Court disagrees. Hopkins states that Schofield did not place Eaton on his enemies list, worked with Eaton for nearly a year before the assault, and Schofield never requested protective custody. In addition to those facts, Eaton was fired from the laundry area a few days before the incident. Schofield told Hopkins that Eaton told him that he would mess him up. Hopkins does not deny that he had a conversation with Schofield regarding Eaton. Hopkins does not deny that he told Schofield Eaton was crazy. Schofield did not have to use the word "threaten" or place someone on his enemies list for Hopkins to take some measure of action. Hopkins knew that Eaton had been fired and that Schofield told him Eaton would "mess him up." Hopkins does not identify any

action that he took to even investigate Schofield's complaint or prevent Eaton from accessing the laundry.

Then, Hopkins contends that Schofield's injuries were not objectively serious. Schofield testified that after being knocked unconscious, he suffered blurry vision and worsening vision over time, neck pain for a week, bruising, and headaches for a while as the swelling went down. [Doc. 69-2 at 15-18.] Schofield's medical records on the date of the assault indicate the following:

> PATIENT HAS HEMATOMA ON RIGHT UPPER EYE, CUT APPROX 2 CM LONG IN THE CREASE BEETWEEN EYE AND NOSE NOT CURRENTLY BLEEDING, 1CM LONG CUT ON RIGHT ELBOW, SCRAPES ON RIGHT UPPER ARM AND SHOULDER, APPROX 10CM LONG X 5CM WIDE, SCRAPE ON RIGHT LOWER BACK APPROX 2CM IN DIAMETER, BACK OF HEAD ON LEFT SIDE IS SWOLLEN AND RED AREA APPROX 4CM IN DIAMETER NOT CURRENTLY BLEEDING, ON FACE THERE IS A SCRATCH ON THE RIGHT UPPER FOREHEAD APPROX 3CM LONG, IN THE MIDDLE OF THE FOREHEAD THERE IS AN AREA APPROX 2.5CM IN DIAMETER THAT IS SWOLLEN, 4-5 SMALLER ABRASIONS ON THE LEFT SIDE OF THE FOREHEAD APPROX 0.25-0.5 CM IN DIAMETER A PIECE. HAIR WAS WET AND THERE WAS A STRONG ODOR. PATIENT REPORTS THAT HE DOES NOT KNOW WHAT IT WAS, JUST SOME KIND OF CHEMICAL. SKIN IS GREASY FEELING AND SHINEY. CUSTODY ASKED IF HE COULD HAVE A SHOWER TO RINSE OFF ANY CHEMICALS THAT MAY BE ON HIM. PERRL, GRIPS EQUAL BILAT, AND GAIT STEADY.

[Doc. 69-6 at 1-2.]. Schofield complained of continuing headaches and blurry vision more than a week later. [Doc. 69-6 at 5-7.] Hopkins contends that Schofield's injuries were not permanent and his eyesight weakening may not be attributable to the attack. Hopkins also contends that Schofield is now able to do all that he did before the assault.

Based upon the law and the record presented, the Court finds that Schofield's injuries were not *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 10 (1992) (bruises, swelling, loosened teeth and cracked dental plate not *de minimis*); *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (a blow to the face that resulted in a two month period of breathing difficulty is greater than *de minimis*); *Blackmon v. Garza*, 484 F. App'x 866, 874 (5th Cir. 2012) (headaches, nausea, shortness of breath, and blurred and dimmed vision more than de minimis). Moreover, a claimant's injuries do not have to be permanent to rise above the *de minimis* level.

Finally, the Court must determine if Hopkins was deliberately indifferent to the substantial risk of harm to Schofield. Unfortunately for Schofield, even if all of his allegations are taken as true, Hopkins' conduct fails to rise to the level of a constitutional wrong. "The alleged conduct certainly points to negligence, and quite possibly gross negligence, but that is insufficient to prove a violation of [his] constitutional rights." *Tucker*, 276 F.3d at 1001-2. Here the evidence is clear that Hopkins made a bad assessment about the threat level that Eaton posed to Schofield. However, Hopkins' conduct did not show deliberate indifference. Negligence, even gross negligence, does not rise to the level of a constitutional violation. *See Pagels,* 335 F.3d at 742. "An official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as an infliction of punishment. *Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) (citing *Farmer*, 511 U.S. at 838). Hopkins' failure to take additional security measures, though probably negligent, did not constitute a reckless disregard of a known risk. *Id.* Therefore, the Court will grant summary judgment in favor of Defendant Roy Hopkins.

## V. Conclusion

Based on the foregoing, the Court will grant Defendants' Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**. [Doc. 67.]

A separate Judgment will be filed contemporaneously with the Memorandum and Order.

Dated this 30th day of September, 2015.

       /s/ Nannette A. Baker
    NANNETTE A. BAKER
    UNITED STATES MAGISTRATE JUDGE